IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREGORY WOLFE** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 13-3315 |
| v. | : | |
| | : | |
| **TBG LIMITED,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 January 28, 2014

## MEMORANDUM OPINION

### INTRODUCTION

Before the Court are motions to dismiss filed by Defendants TBG Limited, Megger Group Limited, Avo International Inc., Avo Multi-Amp, Peter Frank, Alan Hardie and Heinrich Thyssen (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), which seek the dismissal of the complaint on the basis of a forum selection clause contained in the underlying agreement which mandates that Plaintiff's claims are governed by English law and subject to the sole jurisdiction of the courts of England. [ECF 5, 26, and 29]. Gregory Wolfe ("Plaintiff") has filed opposition to said motions [ECF 11, 28 and 31], and these are ripe for consideration. For the reasons stated herein, Defendants' motions to dismiss are granted.

### BACKGROUND

For the purpose of ruling on Defendants' motions to dismiss, this Court accepts, as true, the following relevant allegations in Plaintiff's complaint and attachments:

1

Plaintiff, a resident of Pennsylvania, is the Vice President and General Manager of Megger Group Limited ("Megger").[1] On March 24, 2010, at a meeting in Norristown, Pennsylvania, Defendant Peter Frank ("Mr. Frank") announced a new bonus plan identified as a Long Term Incentive Plan (the "Plan") offered to the Megger senior management team, which included Plaintiff, to encourage them to increase revenue, profitability, and stock value at Megger over a five-year period. The Plan would run from fiscal year 2010 through fiscal year 2014, with a bonus payable at the end of the five-year period. A written version of the Plan was distributed to Plaintiff and each key employee on April 30, 2010.[2]

Paragraph 11 of the Plan provides: "TBG may, in good faith towards the participants, at any time terminate the Plan, or make such modifications of the Plan as it will deem advisable."

Paragraph 12 of the Plan provides that: "The Plan and the rights of each person hereunder will be governed by the laws of the [sic] England and subject to the sole jurisdiction of the English Courts."

At a company meeting in mid-April 2013 in Norristown, Pennsylvania, Mr. Frank announced that TBG had decided to terminate the Plan and offered an immediate "buyout" to plan participants.

On June 13, 2013, Plaintiff filed a complaint against Defendants alleging various claims, including negligent and intentional misrepresentation, breach of contract and/or wrongful termination of the Plan, conspiracy, and violation of the Pennsylvania Wage Payment and Collection Law. In response to the complaint, Defendants filed the instant motions to dismiss.

---

[1] Defendant Megger is an English corporation with offices in Kent, England. Defendant AVO International, Inc. ("AVO") is a Delaware corporation with offices in Dallas, Texas. Defendant AVO Multi-Amp ("AVOM") is a Nevada corporation with offices in Dallas, Texas. Defendant TBG Limited is a Monaco corporation and is the parent and/or holding company and owner of Megger, AVO and/or AVOM. Defendant Peter Frank is an individual residing in Monaco and alleged to be the managing director of TBG and the CEO and Chairman of the Board of Megger, AVO, and/or AVOM. Defendant Alan Hardie is an individual residing in the United Kingdom and alleged to be the Executive Vice President and CFO of MGL, AVO and/or AVOM. Defendant Heinrich Thyssen is an individual residing in Monaco and is alleged to be the sole shareholder and owner of TBG.

[2] A copy of the Plan issued on May 17, 2010, is attached to the complaint.

**LEGAL STANDARD**

As a general rule, motions to dismiss for improper venue are entertained under Federal Rule of Civil Procedure ("Rule") 12(b)(3). The Third Circuit Court of Appeals, however, has held that dismissal under Rule 12(b)(6) is also proper where a forum selection clause designates another court as the exclusive venue for litigation. *See Salovaara v. Jackson National Life Insurance Co.*, 246 F.3d 289, 298-299 (3d Cir. 2001). When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

Where an agreement which contains a valid forum selection clause is the issue of a motion to dismiss, a Rule 12(b)(6) dismissal is the proper means of enforcing the forum selection clause. *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 84, n. 1 (3d Cir. 2006).

**DISCUSSION**

In their motions to dismiss, Defendants argue that the complaint should be dismissed in its entirety because each of Plaintiff's claims is subject to the forum selection clause stipulated in the Plan. It is axiomatic that parties to a contract may select, in advance of litigation, the forum and the law under which their dispute will be settled. *Banc Auto Inc. v. Dealer Services Corp.*, 2008 WL 4055830, *2 (E.D. Pa. Aug. 28, 2008) (citing *Botman Intern., B.V. v. International Product Imports, Inc.*, 205 Fed. Appx. 937, 941 (3d Cir. 2006)). Although forum selection clauses are generally treated as ordinary contract provisions and are subject to ordinary rules of contract interpretation, they are entitled to great weight and are presumptively valid. *Grossman v. Grossman*, 2009 WL 449133, *4 (E.D. Pa. Feb. 23, 2009) (citing *Banc Auto Inc.*, 2008 WL 4055830 at *6). The strongest external sign of the agreement between contracting parties is the words they use in the written contract. Thus, when the language of the contract is unambiguous, that is, when the contract is reasonably capable of only one construction, the inquiry ends and the court must enforce the contract as written. *Integrated Health Resources, LLC v. Rossi Psychological Group*, 537 F. Supp. 2d 672, 674 (D.N.J. 2008) (quoting *John Wyeth & Bro. Ltd v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997)).

As stated, paragraph 12 of the Plan (the "forum selection clause") provides: "The Plan and the rights of each person hereunder will be governed by the laws of the [sic] England and subject to the sole jurisdiction of the English Courts." By its plain meaning, this forum selection

4

clause is mandatory, requiring all claims involving the rights of the parties under the Plan to be litigated in England.

"[I]n federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 877 (3d Cir. 1995). Following the decision in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the Third Circuit has held that forum selection clauses are entitled to great weight and are presumptively valid. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983). Interpreting *Bremen*, the Third Circuit held:

> [A] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Id.*

"A forum selection clause is 'unreasonable' where the [opposing party] can make a 'strong showing' either that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' or that the clause was procured through 'fraud or overreaching.'" *Foster v. Chesapeake Insurance Company, Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *Bremen* and enforcing forum selection clause). A forum selection clause "should control absent a strong showing that it should be set aside." *Bremen*, 407 U.S. at 15.

The Third Circuit has consistently enforced forum selection clauses, including those requiring litigation in foreign countries. *See e.g., John Wyeth & Brother Limited v. CIGNA International Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) (enforcing forum selection clause

5

requiring litigation in England); *Hodes v. S.N.C. Achille Lauro ed Altri-Gestione*, 858 F.2d 905, 916 (3d Cir. 1988) (enforcing forum selection clause requiring litigation in Italy by dismissing action); *Coastal Steel Corp.*, 709 F.2d at 203 (enforcing forum selection clause requiring litigation in England).

Here, Plaintiff makes no allegations that the forum selection clause was the product of fraud or overreaching. Rather, Plaintiff contends that the forum selection clause is unenforceable because it was "the product of undue influence and overwhelming bargaining power" and is, otherwise, an unenforceable adhesion contract and/or unconscionable. Plaintiff's arguments are without merit.

An adhesion contract is one prepared by a party with excessive bargaining power and presented to the other party on a "take it or leave it" basis. *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004). Inequality of bargaining power, however, does not render a contract or its terms unenforceable. *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 183 (3d Cir. 1999); *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 229 (3d Cir. 1997). Even an adhesion contract is enforceable unless the plaintiff lacked a meaningful choice whether to accept the provision in question and the provision is "so one-sided as to be oppressive." *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 184 (3d Cir. 1998).

Under Pennsylvania law, "an employment contract is not a contract of adhesion, even when an employee is told to 'sign or be terminated' or merely because a party alleges that he entered into an agreement which he would not have entered if his financial circumstances were more secure." *Latuszewski v. Valic Financial Advisors, Inc.*, 2007 WL 4462739, *13 (W.D. Pa. Dec. 19, 2007); *see also Stebok v. American General Life and Accident Ins. Co.*, 715 F. Supp. 711, 714 (W.D. Pa. 1989), *aff'd*, 888 F.2d 1382 (3d Cir. 1989). Further, "[t]hat there may not

have been actual negotiations over the clause does not affect its validity." *Foster v. Chesapeake Insurance Company, Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (citing *Carnival Cruise Lines, Inc. v. Shute*, 111 S.Ct. 1522, 1526 (1991)). The Plan was presented as an incentive to senior management to increase revenues with an expectation of a bonus as part of their job-related efforts.

A contract may be voided for unconscionability only if it is unconscionable in both procedure and substance. *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999); *Grant v. Philadelphia Eagles, LLC*, 2009 WL 1845231, *6 (E.D. Pa. June 24, 2009) (holding that arbitration clause in employment contract was not unconscionable). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris*, 183 F.3d at 181. Again, the absence of negotiation does not constitute procedural unconscionability. *Myers v. Jani-King of Philadelphia, Inc.*, 2012 WL 6058146, *3 (E.D. Pa. Dec. 5, 2012); *see also Foster*, 933 F.2d at 1219 ("That there may not have been actual negotiations over the clause does not affect its validity."); *Witmer v. Exxon Corp.*, 495 Pa. 540, 551 (Pa. 1981) ("This Court and the federal courts in Pennsylvania . . . have refused to hold contracts unconscionable simply because of a disparity in bargaining power.").

Substantive unconscionability refers to contractual terms that are "unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris*, 183 F.3d at 181. Thus, to establish unconscionability, a movant must establish "that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Id.*

In support of the adhesion nature of the contract and the unconscionable arguments made, Plaintiff asserts that the Plan was presented to him on a "take-it-or-leave-it basis" and without any opportunity to negotiate. It is well-established that the placement of a forum selection clause in a non-negotiated contract does not render it unreasonable. *Foster*, 933 F.2d at 1219. Therefore, the fact that Plaintiff did not engage in actual negotiations with Defendants over the forum selection clause does not make the forum selection clause unreasonable or unenforceable. Nowhere does Plaintiff allege that his employment was somehow conditioned on his acceptance of the forum selection clause or that Defendants used any type of pressure tactics on Plaintiff to accept the terms of the Plan. Regardless, the purported absence of negotiations is insufficient to invalidate the forum selection clause.

Plaintiff also argues that the forum selection clause is unenforceable because, if enforced, "it would effectively deprive Plaintiff of his day in court." Plaintiff's argument is also without merit. Although litigating in England may increase Plaintiff's litigation costs, Plaintiff will not be deprived of his day in court. Indeed, numerous courts have rejected similar argument and have enforced forum selection clauses requiring matters to be litigated in England. *See e.g.*, *Bremen*, 407 U.S. 1 (1972) (enforcing forum selection clause requiring litigation in England); *John Wyeth & Bros. Ltd.*, 119 F.3d at 1074 (enforcing forum selection clause in parties' insurance contract requiring litigation in England); *Richards v. Lloyd's of London*, 135 F.3d 1289 (9th Cir. 1998) (enforcing forum selection clause requiring litigation in England). Significantly, Plaintiff does not allege that he cannot receive a fair adjudication of his claims in the English Courts, but instead argues inconvenience. Thus, Plaintiff has failed to show that the forum selection clause is procedurally or substantively unconscionable or otherwise unenforceable, and has failed to overcome the presumptive validity and enforceability of the forum selection clause.

However, our analysis does not stop here. In light of the United States Supreme Court's recent decision in *Atlantic Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Texas,* 571 U.S. ___ , 134 S.Ct. 568 (2013) a district court must also consider the §1404(a) *forum non conveniens* factors when determining whether to enforce a forum selection clause that selects a nonfederal forum, *i.e.*, a state or foreign tribunal. *Id.* at 580. The Supreme Court has made it clear that where a valid forum selection clause exists, as is the case here, a district court must consider *only* the public-interest factors, and not the private-interest factors. *Id.* at 582. "Because those factors [*i.e.*, the public-interest factors] will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* In addition, the Supreme Court held that where the plaintiff defied the parties' forum selection clause by filing in a non-chosen forum, as did Plaintiff here, the plaintiff "bear[s] the burden of showing that public-interest factors *overwhelmingly* disfavor a transfer." *Id.* at 583 (emphasis added).

Consequently, as the party seeking to overcome an otherwise enforceable forum selection clause, Plaintiff bears the burden of demonstrating that the public-interest factors "overwhelmingly" weigh in favor of venue in this forum, as opposed to the forum in England. In his opposition to Defendants' motions, Plaintiff makes no attempt to meet this burden, and instead, focuses solely on the purported inconvenience to him in litigating his action in England. As made clear in *Atlantic Marine*, however, the private-interest factors, such as the convenience to the litigants, are of no import: "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582. This Court finds, therefore, that

Plaintiff has failed to meet his burden of substantiating the exceptional circumstances required to warrant disregard of the parties' contractual choice of forum.

In the alternative, Plaintiff argues that if the forum selection clause is deemed enforceable, it should only be applied to his contract claims and not his tort claims. Defendants counter by arguing that the forum selection clause applies to all of Plaintiff's claims (contract and tort) because each arises from the contract itself.

"The question of the scope of a forum selection clause is one of contract interpretation." *John Wyeth & Brother Ltd.*, 119 F.3d at 1073. As stated, the forum selection clause at issue here provides: "The Plan and the rights of each person hereunder will be governed by the laws of the [sic] England and subject to the sole jurisdiction of the English Courts." This clause is broadly worded and unambiguously applies to any claims involving the "rights of each person" arising under the Plan. Because each of Plaintiff's claims necessarily involves a determination of the parties' respective rights under the Plan, this Court opines that each claim falls within the scope of the parties' forum selection clause.

In *Coastal Steel Corp.*, 709 F.2d 190, the Third Circuit rejected the very same argument being made here by Plaintiff, and held that all of the plaintiff's claims, both contract and tort based, must be litigated in England pursuant to the parties' forum selection clause, *to wit:*

> If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as negligent design, breach of implied warranty, or misrepresentation . . . [W]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain.

*Id.* at 203.

In light of the case law cited and because all of Plaintiff's claims involve and/or are intertwined with a determination of the parties' respective "rights" under the Plan, this Court concludes that both the contractual and tort claims are subject to the forum selection clause and must be litigated in England.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are granted. An order consistent with this memorandum opinion follows.

NITZA I. QUIÑONES ALEJANDRO, J.